LEONARD L. GUMPORT (Bar No. 86935)
PETER J. MASTAN (Bar No. 190250)
LISA N. NOBLES (Bar No. 233723)
GUMPORT | REITMAN
550 South Hope Street, Suite 825
Los Angeles, California 90071-2627
Telephone:  (213) 452-4900
Facsimile:   (213) 623-3302

Attorneys for Christopher R. Barclay,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Substantively Consolidated Bankruptcy Estates of MIDLAND EURO EXCHANGE, INC., MIDLAND EURO, INC., MIDLAND GROUP, INC., MOSHE LEICHNER, and ZVI LEICHNER,<br><br>Debtors. | Bk. No. SV03-13981GM<br>[Includes cases previously designated Bk. Nos. SV 03-13982-AG, SV 03-13986-AG, SV 03-13987, and SV 03-13989-AG]<br><br>CHAPTER 7<br><br>NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING THE TRUSTEE TO COMPROMISE CLAIMS WITH GALINA KUBRAK, 18607 VENTURA ASSOCIATES, LTD., AND YEHOSHUA MICHAELY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LEONARD L. GUMPORT; AND EXHIBITS<br><br>DATE:   January 16, 2008<br>TIME:   10:00 a.m.<br>PLACE:  Courtroom 303<br>        21041 Burbank Boulevard<br>        Woodland Hills, CA<br>        [Judge Mund] |

/ / /

/ / /

/ / /

/ / /

**TO THE DEBTORS, THOSE CREDITORS ENTITLED TO NOTICE PURSUANT TO THE COURT'S APRIL 8, 2004 ORDER LIMITING NOTICE, THE OFFICE OF THE UNITED STATES TRUSTEE, GALINA KUBRAK, 18607 VENTURA ASSOCIATES, LTD., YEHOSHUA MICHAELY, AND OTHER PARTIES IN INTEREST:**

**NOTICE IS HEREBY GIVEN** that, on the 10:00 a.m. calendar, on January 16, 2008, in Courtroom 303 of the United States Bankruptcy Court, 21041 Burbank Boulevard, Woodland Hills, CA 91367, the Honorable Geraldine Mund, United States Bankruptcy Judge, will conduct a hearing on the motion (the "Motion") filed by Christopher R. Barclay, chapter 7 trustee (the "Trustee") of the substantively consolidated bankruptcy estates (the "Estate") of debtors Midland Euro Exchange, Inc., Midland Euro, Inc., Midland Group, Inc., Moshe Leichner, and Zvi Leichner (the "Debtors"), to approve a compromise with Galina Kubrak ("Kubrak"), 18607 Ventura Associates, Ltd., a California limited partnership ("18607 Ventura") and Yehoshua Michaely ("Michaely") (together, the "Defendant Parties"). Specifically, the Trustee seeks an order that:

    **1.**    Approves the Trustee's proposed settlement with the Defendant Parties as set forth in the Settlement Agreement and Mutual General Release (the "Agreement") which is attached as **Exhibit 1**;

    **2.**    Authorizes the Trustee to perform the terms of the Agreement, including the exchange of releases specified in the Agreement and the dismissal as to the Defendant Parties in <u>Barclay, Trustee v. Yossi Attia, et al.</u>, Adv. No. 04-01390 (the "Adversary Proceeding") on the terms and conditions specified in the Agreement;

    **3.**    Determines that the Agreement was made in good faith and in an arm's-length transaction;

    **4.**    Dissolves the Lis Pendens Order (as defined in the Agreement) on the terms specified in the Agreement;

    **5.**    Disallows all proofs of claim of the Defendant Parties on the terms specified in the Agreement (including, without limitation, Claim No. 142 by Kubrak for $2.2 million); and

6.    Determines that adequate notice of the hearing on the Motion was given.

**NOTICE IS FURTHER GIVEN** that the Motion is made under 11 U.S.C. § 363(b) and Fed.R.Bankr.P. 9019(a) on the grounds that the Agreement is in the best interests of the Estate and is made in good faith. In the Adversary Proceeding"), the Trustee has asserted claims to avoid and recover fraudulent transfers in excess of $2 million made by the Debtors, directly or indirectly, to the Defendant Parties. In addition to the Adversary Proceeding, 18607 Ventura contends that it is entitled to $200,000.00 (plus interest and attorney's fees) which was delivered to the Trustee by 18607 Ventura pursuant to Bankruptcy Court Order entered in the Adversary Proceeding on August 4, 2006 (the "Lis Pendens Order") and stipulation between the parties. The Trustee disputes these contentions. Further, certain of the Defendant Parties have filed proofs of claim against the Estate, including, without limitation, Claim No. 142 by Kubrak for $2.2 million.

On the terms and conditions specified in the Agreement, immediately upon the order approving the Motion becoming a "Final Order" as defined in the Agreement, the Trustee shall be entitled to keep, for the benefit of the Estate, the Lis Pendens Deposit and the Defendant Parties shall have no further interest in and claim to the Lis Pendens Deposit. In addition, within 30 days of the order approving the Motion becoming a "Final Order" as defined in the Agreement, the Defendant Parties shall pay to the Trustee $250,000.00 (the "Settlement Amount").

In the event the Defendant Parties do not pay the Settlement Amount to the Trustee within that time, the Defendant Parties, jointly and severally, shall be obligated to pay $2 million to the Trustee. (Please note that the Defendant Parties may seek to frustrate recovery by the Trustee of both the $250,000 and the $2 million.) It is not a certainty that the Defendant Parties will perform their obligations.

Upon the order approving the Motion becoming a "Final Order" as defined in the Agreement, and with no further action, the Defendant Parties shall be deemed to have withdrawn with prejudice any and all proofs of claim against the Estate.

///

The proposed settlement between the Trustee and the Defendant Parties is in the best interests of the Estate in that:

(1) Pursuant to the terms and conditions of the Agreement, the Trustee will be entitled to keep, for the benefit of the Estate, the Lis Pendens Deposit, including all interest earned thereon.

(2) The Defendant Parties will pay to the Trustee $250,000.00 within 30 days of the order approving the Motion becoming a "Final Order" as defined in the Agreement. If the Defendant Parties fail to pay the $250,000.00 to the Trustee within that time period, then the Defendant Parties, jointly and severally, must pay to the Trustee $2,000,000.00.

(3) The Estate is avoiding the potentially significant costs of future litigation with the Defendant Parties.

(4) As soon as the order approving the Motion becomes a "Final Order" as defined in the Agreement, the Defendant Parties are deemed to have withdrawn all proofs of claim, formal or informal, that the Defendant Parties may have against the Estate, saving the Estate the expense of objecting to those claims.

**The description of the Agreement contained in this Notice and the accompanying Memorandum of Points and Authorities is merely a summary of the proposed settlement. The complete terms of the proposed settlement are set forth in the Agreement attached as Exhibit 1 to the Motion. The Trustee urges all interested parties to carefully read the Agreement.**

**NOTICE IS FURTHER GIVEN** that the Trustee's Motion is based on **(1)** this Notice of Motion and Motion; **(2)** the attached Memorandum of Points and Authorities; Declaration of Leonard L. Gumport; and Exhibits; **(3)** the concurrently filed Notice of Hearing on the Motion (a copy of which is attached as **Exhibit 7**); **(4)** the pleadings on file with the Court of which the Court is requested to take judicial notice, and **(5)** upon such further evidence that may be properly submitted prior to or at the hearing on the Motion.

///

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Bankruptcy Rule 9013-1(a)(7), any opposition to the Motion must be in writing; must be filed with the Court and served upon counsel for the Trustee, counsel for Kubrak, 18607 Venture, Michaely, and the Office of the United States Trustee, at the addresses set forth below not later than 14 days before the date set for the hearing; and must include a Memorandum of Points and Authorities and competent evidence in support of the opposition:

<u>For Filing With the Court</u>
Clerk's Office
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills, CA 91367

<u>For Service on Yehoshua Michaely</u>
Timothy R. Hanigan, Esq.
Lang, Hanigan & Carvalho, LLP
210212 Ventura Boulevard, Suite 450
Woodland Hills, CA 91364

<u>For Service on the Trustee</u>
Christopher R. Barclay
c/o Leonard L. Gumport, Esq.
Gumport | Reitman
550 South Hope Street, Suite 825
Los Angeles, CA 90071

<u>For Service on the Office of the United States Trustee</u>
Jennifer Braun, Esq.
Office of the U.S. Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

<u>For Service on 18607 Ventura Associates, Ltd., and Galina Kubrak</u>
Andrew A. Goodman, Esq.
Greenberg & Bass, LLP
16000 Ventura Boulevard, Suite 1000
Encino, CA 91436

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Bankruptcy Rule 9013-1(a)(11), <u>failure to timely file and serve an opposition not later than 14 days before the hearing date may constitute a waiver of such opposition and may be deemed by the Court to constitute consent to the relief requested herein</u>.

DATED: December 17, 2007

Respectfully submitted,

GUMPORT | REITMAN

By: _____
Leonard L. Gumport
Attorneys for Christopher R. Barclay, Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Christopher R. Barclay, chapter 7 trustee ("Trustee") of the substantively consolidated bankruptcy estates ("Estate") of debtors Midland Euro Exchange, Inc. ("MEEI"), Midland Euro, Inc., Midland Group, Inc., Moshe Leichner, and Zvi Leichner ("Debtors"), submits this Memorandum of Points and Authorities in support of his motion to approve the Trustee's proposed settlement with Galina Kubrak ("Kubrak"), 18607 Ventura Associates, Ltd., a California limited partnership ("18607 Ventura") and Yehoshua Michaely ("Michaely") (together, the "Defendant Parties") as set forth in the Settlement Agreement and Mutual General Release (the "Agreement") attached as **Exhibit 1**.

The Trustee has asserted claims against the Defendant Parties to avoid and recover more than $2 million allegedly fraudulently transferred, directly or indirectly, to the Defendant Parties by the Debtors. In addition, 18607 Ventura contends that it is entitled to $200,000.00 (the "Lis Pendens Deposit") (plus interest and attorney's fees) which was delivered to the Trustee by 18607 Ventura pursuant to Bankruptcy Court Order and stipulation between the parties. The Trustee disputes these contentions. Further, certain of the Defendant Parties have filed proofs of claim against the Estate, including, without limitation, Claim No. 142 by Kubrak for $2.2 million.

On the terms and conditions specified in the Agreement, immediately upon the order approving the Motion becoming a "Final Order" as defined in the Agreement, the Trustee shall be entitled to keep, for the benefit of the Estate, the Lis Pendens Deposit and the Defendant Parties shall have no further interest in and claim to the Lis Pendens Deposit. In addition, within 30 days of the order approving the Motion becoming a "Final Order" as defined in the Agreement, the Defendant Parties shall pay to the Trustee $250,000.00 (the "Settlement Amount"). In the event the Defendant Parties do not pay the Settlement Amount to the Trustee within that time, the Defendant Parties shall pay $2 million to the Trustee. Upon the order approving the Motion becoming a "Final Order" as defined in the Agreement, and with no further action, the Defendant Parties shall be deemed to have withdrawn with

prejudice any an all proofs of claim against the Estate. Notice of this Motion in the form of **Exhibit 7** is being served in accordance with the Court's April 8, 2004 order limiting notice.

## II. STATEMENT OF FACTS

### A. The Debtors' Bankruptcy

On May 8, 2003 (the "Petition Date"), involuntary bankruptcy petitions were filed against the Debtors in the United States Bankruptcy Court (the "Court") for the Central District of California, San Fernando Valley Division. By Court order entered May 16, 2003, the Debtors' Estates were substantively consolidated. On June 18, 2003, the Court entered an order for relief under chapter 7 of the Bankruptcy Code and the appointed the Trustee. Gumport Decl., ¶ 3(a).

### B. The Leichners' Guilty Pleas

On June 12, 2003, Moshe Leichner and Zvi Leichner pleaded guilty to federal fraud and money laundering charges. Gumport Decl., ¶ 3(b) and Exs. 2 and 3. The fraud and money laundering charges to which the Leichners plead guilty were during the time period July 1998 through February 2003. Ex. 2, p. 5; Ex. 3, p. 5.

### C. The Adversary Proceeding

#### 1. The Complaint

On September 30, 2004, the Trustee his complaint (the "Complaint") in the adversary proceeding (i.e., the "Adversary Proceeding") against the Defendant Parties and others entitled <u>Barclay, Trustee v. Yossi Attia, et al.</u>, Adv. No. AD 04-01390. In the Adversary Proceeding, the Trustee sought to recover as fraudulent transfers exceeding $2 million that the Trustee contends the Defendant Parties received from the Debtors either directly or indirectly prior to the filing of the Debtors' bankruptcy. Gumport Decl., ¶ 3(c) and Ex. 4

In the Adversary Proceeding, the Trustee alleged that the transfers were made to the Defendant Parties as part of the Debtors' Nominee Scheme (as defined in the Complaint) whereby Moshe Leichner transferred into the names of third parties assets that Moshe Leichner purchased using funds from the Debtors' bank accounts which contained commingled funds from the Debtors' Ponzi Scheme. Ex. 4, p. 9 .

Certain of the Defendant Parties have filed proofs of claim (the "Proofs of Claim") against the Estate. The Proofs of Claim include, but are not limited to, Claim No. 142 by Kubrak for $2.2 million.

### 2. The Attia Schnapp Settlement

On June 16, 2006, in the Bankruptcy Case, the Bankruptcy Court entered an order approving a settlement (the "Attia-Schnapp Settlement") between the Trustee and the following persons and entities: (1) Yossi Attia, (2) Moshe Schnapp, (3) Adagio Trading, Ltd., (4) AS Holdings, LLC, (5) Aerial Development, Inc., (6) American Realty Group, Inc., (7) Moshe Har Adir, (8) Bonanza Realty Inc., (9) Bonanza Realty LLC, (10) Elite Seafood and Provisions, LLC, (11) Glendon Advisors, Inc., (12) Q Boy, Ltd. (Foreign), (13) Q Boy Ltd. (Nevada) (14) SC SC, LLC, (15) SSWP, LLC, (16) Van Nuys Plaza, LLC, (17) Amotz "Bobby" Frenkel, (18) Nili Frenkel, (19) Westlock Holdings, Ltd., (20) Ilan Kenig, and (21) A.O. Holdings, LLC (collectively, the "Attia-Schnapp Parties"). The Defendant Parties were not parties to the Attia-Schnapp Settlement and did not consent to it. Gumport Decl., ¶ 3(d).

On July 6, 2006, in the Bankruptcy Case, based on objections filed by the Defendant Parties to a motion by the Attia-Schnapp Parties for a determination that the Attia-Schnapp Settlement was in good faith under Cal. Code Civ.Proc. § 877.6, the Bankruptcy Court filed a ruling (the "§ 877.6 Ruling") that the Attia-Schnapp Parties did not settle in good faith within the meaning of § 877.6. Gumport Decl., ¶ 3(d).

### 3. The Lis Pendens

On August 4, 2006, the Bankruptcy Court entered an order entitled "Order on Defendant 18607 Ventura Associates, Ltd.'s Motion to Expunge Lis Pendens." Gumport Decl., ¶ 3(e) and Ex. 5.

On August 4, 2006, in the Adversary Proceeding, 18607 Ventura and the Trustee signed and filed a stipulation (the "Lis Pendens Stipulation") entitled "Stipulation Requiring Defendant to Deliver Funds to the Trustee for Deposit in a Segregated Account, Bearing Interest, To Serve as the Undertaking to Expunge Lis Pendens Subject to Further Order of the Court." Gumport Decl., ¶ 3(e) and Ex. 6.

During August 2006, pursuant to the Lis Pendens Stipulation, 18607 Ventura caused $200,000.00 (the "Lis Pendens Deposit") to be delivered to the Trustee pursuant to the Lis Pendens Stipulation. 18607 Ventura contends that it is entitled to the return of the Lis Pendens Deposit, plus interest and attorney's fees. The Trustee disputes those contentions.

### 4.    Summary Judgment Motion filed by Kubrak and 18607 Ventura

On October 3, 2007, in the Adversary Proceeding, 18607 Ventura and Kubrak served a motion for summary judgment (the "SJ Motion"). Gumport Decl., ¶ 3(f). On October 17, 2007, the Trustee served his opposition to the SJ Motion. At page 24 of the Trustee's opposition brief, the Trustee alleges that the Transfers made to or for the benefit of the Defendant Parties total at least $2,216,543, exclusive of interest.

Prior to the hearing on the SJ Motion, the Trustee submitted extensive opposition papers, including a request to take judicial notice and declarations from Grant Newton, CPA and Michael A. Cardenas. The opposition papers reflects the litigation history of the Defendant Parties and their alleged participation in asset manipulation schemes of Moshe Leichner. The Trustee's allegations, if true, reflect that any litigation against the Defendant Parties will involve extensive collection problems. Michaely has already once filed bankruptcy and has a $20 million judgment pending against him, as reflected by the Trustee's opposition to the SJ Motion.

Shortly before the hearing on the SJ Motion, the Court issued a tentative ruling. See Ex. 8. The tentative ruling was to deny the SJ Motion and to consider granting a summary judgment against one or more of the movants.

On November 7, 2007, the date of the hearing on the SJ Motion, the parties agreed to continue the matter for one week in an effort to try to settle the matter, subject to Bankruptcy Court approval. The hearing on the SJ Motion was subsequently continued to January 30, 2008 to allow the parties to continue settlement discussions. Gumport Decl., ¶ 3(f).

The Trustee is entering into the proposed settlement by reason of the extreme collection difficulties that the Trustee expects to encounter by reason of the litigation history of the Defendant Parties.

### III. SUMMARY OF THE PROPOSED SETTLEMENT

On the terms and conditions specified in the Agreement, immediately upon the order approving this Motion becoming a "Final Order" as defined in the Agreement, the Trustee shall be entitled to keep, for the benefit of the Estate, the Lis Pendens Deposit and the Defendant Parties shall have no further interest in and claim to the Lis Pendens Deposit.

In addition, within 30 days of the order approving the Motion becoming a "Final Order" as defined in the Agreement, the Defendant Parties shall pay to the Trustee $250,000.00 (the "Settlement Amount").

Together, if the Defendant Parties pay the Settlement Amount (a matter that is not at all free from doubt given the litigation history of the Defendant Parties), then the Trustee will recover approximately $450,000 (the Lis Pendens Deposit (with interest)) and the $250,000 additional payment.

In the event the Defendant Parties do not pay the Settlement Amount to the Trustee within that time, the Defendant Parties, jointly and severally, shall pay $2 million to the Trustee.

Upon the order approving the Motion becoming a "Final Order" as defined in the Agreement, and with no further action, the Defendant Parties shall be deemed to have withdrawn with prejudice any and all proofs of claim against the Estate, including but not limited to Kubrak's claim (Claim No. 142) for $2.2 million.

In substance, the concept underlying the proposed settlement is that the Defendant Parties are likely liable for $2 million, but that the Trustee will likely have difficulty collecting that amount from them. As a result, provided the Defendant Parties pay the Lis Pendens Deposit plus $250,000.00 to the Trustee, he is willing to give them a discount.

**The preceding is only a summary of the proposed settlement. The actual terms of the settlement are set forth in the Agreement attached as Exhibit 1. There are no terms other than those expressly set forth in the Agreement.**

///

///

## IV. STANDARDS FOR APPROVAL OF A SETTLEMENT

The authority granted to a trustee to compromise a controversy is set forth in Fed.R.Bankr.P. 9019(a), which provides in relevant part that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement."

The decision to accept or reject a settlement lies within the sound discretion of the Bankruptcy Court. In re Carson, 82 B.R. 847, 852-53 (Bankr. S.D. Ohio 1987); Matter of Ericson, 6 B.R. 1002, 1005-06 (D. Minn. 1980); In re Hydronic Enterprise, Inc., 58 B.R. 363, 365 (Bankr. D.R.I. 1986).

In passing on a proposed settlement, the standard that courts applied under the former Bankruptcy Act is the same standard that courts should apply under the Bankruptcy Code. Matter of Carla Leather, Inc., 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984).

As stated by the Supreme Court in Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), under the Act, in order to approve a proposed settlement, a court had to find that the settlement was "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Id., 390 U.S. at 424.

The Ninth Circuit has held that, in considering a proposed settlement, the court should consider these factors:

> (a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988), quoting In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (citation omitted).

In reviewing a proposed settlement, a court is not "to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). A "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken. Matter of Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982); In re Blair, 538 F.2d 849, 851-52 (9th Cir. 1976).

## V. THE COURT SHOULD APPROVE THE SETTLEMENT

The proposed settlement with the Defendant Parties satisfies the factors identified by the Ninth Circuit in In re Woodson and In re A & C Properties, and should be approved.

### A. Probability of Success in the Litigation

As stated above, the SJ Motion is currently pending. The tentative ruling is to deny the SJ Motion and possibly to grant summary judgment against certain of the Defendant Parties. That will only begin the collection process.

While the Trustee believes that his position is meritorious, a settlement on the terms of the Agreement is preferable to a possible unfavorable ruling on the SJ Motion. The transactions between the Debtors and the Defendant Parties were complex and many of the transfers were made by the Debtors to the Defendant Parties indirectly. And if the allegations of the Complaint are not believed (and the Defendants Parties certainly do dispute the Complaint), then the Trustee will not likely prevail. More importantly, as discussed below, if the Trustee's allegations are true, then recovery from this particular set of defendants will be extremely difficult by reason of their extensive history of asset manipulation.

### B. Difficulties in Collection

As stated, even if the Trustee prevails on his claims, there are no assurances of collection. If the Trustee's disputed claims do have merit, then there is a substantial risk that the Defendant Parites would engage in conduct making collection difficult, regardless of the merits of the Trustee's claims. At least one of the Defendant Parties (Kubrak) does not live in the United States and enforcement of any judgment against her would be difficult and

expensive, at best. As reflected by the Trustee's opposition to the SJ Motion, Michaely previously filed bankruptcy and has a $20 million judgment against him. According to the Trustee, defendants Kubrak and 18607 Ventura are part of Michaely's asset manipulation scheme, which has last many years.

### C. Complexity of the Litigation, and Expense, Inconvenience and Delay

Litigation is inherently risky and costly. This case involves a complex financial fraud committed by the Debtors and (if the Trustee's disputed allegations have merit) the Defendant Parties, utilizing shells and nominees. As reflected by the SJ Motion (which the Trustee strongly disputes), each of the Defendant Parties maintains that he or she gave value in good faith and/or that the value given by the defendant exceeded the value received. The Defendant Parties will also allege that even if they did receive otherwise voidable transfers, no liability resulted because the defendant did not receive the benefit of the transfer.

### D. Paramount Interest of Creditors

The proposed Settlement will have these results: (a) the Defendant Parties will pay to the Trustee $250,000.00 within 30 days of the order approving this motion becoming a "Final Motion," or the Defendant Parties will be obligated to pay $2 million to the Trustee; (b) the Defendant Parties will release all claims to and interest in the $200,000.00+ Lis Pendens Deposit; and (c) the Defendant Parties will release all claims against the Estate, including, but not limited to Kubrak's claim (Claim No. 142) for $2.2 million. Accordingly, the proposed settlement satisfies the paramount interests of the Estate's creditors.

## VI. CONCLUSION

For the reasons set forth above, the Court should approve the Agreement and enter an order that grants the relief requested in the notice of this motion.

DATED: December 17, 2007

Respectfully submitted,

GUMPORT | REITMAN

By: _____
Leonard L. Gumport
Attorneys for Christopher R. Barclay, Trustee

## DECLARATION OF LEONARD L. GUMPORT

**I, LEONARD L. GUMPORT, state:**

1. I am an attorney admitted to practice before this Court and I am a partner in the law firm of Gumport | Reitman, counsel to Christopher R. Barclay in his capacity as chapter 7 trustee (the "Trustee") of the substantively consolidated bankruptcy estates (the "Estate") of Midland Euro, Inc., Midland Euro Exchange, Inc., Midland Group, Inc., Moshe Leichner, and Zvi Leichner (collectively, the "Debtors"). I have personally represented the Trustee in this bankruptcy case since shortly after his appointment, including with respect to the Trustee's adversary proceeding against defendants Galina Kubrak ("Kubrak"), 18607 Ventura Associates, Ltd., a California limited partnership ("18607 Ventura") and Yehoshua Michaely ("Michaely") (together, the "Defendant Parties"). As a result, except as to matters set forth as subject to judicial notice, I have personal knowledge of the facts stated in this declaration; and, if called as a witness, could and would competently testify under oath to those facts.

2. Attached as **Exhibit 1** is the proposed Settlement Agreement and Mutual General Release (the "Agreement") between the following parties: (a) the Trustee, and (b) the Defendant Parties. To the best of my knowledge, information, and belief, the Agreement has no terms or conditions other than those expressly set forth in the Agreement.

3. The Court is requested to take judicial notice of the following:

   a. On May 8, 2003 (the "Petition Date"), involuntary bankruptcy petitions were filed against the Debtors; on May 16, 2003, the Debtors' Estates were substantively consolidated; and on June 18, 2003, the Court entered an order for relief under chapter 7 of the Bankruptcy Code and Mr. Barclay was appointed as the Trustee.

   b. On June 12, 2003, Moshe Leichner and Zvi Leichner pleaded guilty to federal fraud charges in <u>USA v. Moshe Leichner and Zvi Leichner</u>. **Exhibit 2** is a copy of Moshe Leichner's Plea Agreement. **Exhibit 3** is a copy of Zvi Leichner's Plea Agreement.

   c. On September 30, 2004, the Trustee filed a complaint (the "Complaint") for the recovery of fraudulent transfers that the Debtors made, directly or indirectly, to or for the benefit of the Defendant Parties. A copy of an excerpt from the Complaint (without

1 | exhibits) is attached as **Exhibit 4**. In November 2004, the Defendant Parties filed a motion to
2 | dismiss the Complaint. By order entered April 13, 2005, the Court denied that motion.

3 |      **d.**     On June 16, 2006, in the Bankruptcy Case, the Bankruptcy Court entered
4 | an order approving a settlement (the "Attia-Schnapp Settlement") between the Trustee and the
5 | following persons and entities: (1) Yossi Attia, (2) Moshe Schnapp, (3) Adagio Trading, Ltd.,
6 | (4) AS Holdings, LLC, (5) Aerial Development, Inc., (6) American Realty Group, Inc., (7)
7 | Moshe Har Adir, (8) Bonanza Realty Inc., (9) Bonanza Realty LLC, (10) Elite Seafood and
8 | Provisions, LLC, (11) Glendon Advisors, Inc., (12) Q Boy, Ltd. (Foreign), (13) Q Boy Ltd.
9 | (Nevada) (14) SC SC, LLC, (15) SSWP, LLC, (16) Van Nuys Plaza, LLC, (17) Amotz
10 | "Bobby" Frenkel, (18) Nili Frenkel, (19) Westlock Holdings, Ltd., (20) Ilan Kenig, and (21)
11 | A.O. Holdings, LLC (collectively, the "Attia-Schnapp Parties"). The Defendant Parties were
12 | not parties to the Attia-Schnapp Settlement and did not consent to it. On July 6, 2006, in the
13 | Bankruptcy Case, based on objections filed by the Defendant Parties to a motion by the Attia-
14 | Schnapp Parties for a determination that the Attia-Schnapp Settlement was in good faith under
15 | Cal. Code Civ.Proc. § 877.6, the Bankruptcy Court filed a ruling (the "§ 877.6 Ruling") that
16 | the Attia-Schnapp Parties did not settle in good faith within the meaning of § 877.6.

17 |      **e.**     On August 4, 2006 the Court entered "Lis Pendens Order" requiring the
18 | Trustee and 18607 Ventura to enter into a stipulation (the "Lis Pendens Stipulation") by
19 | which 18607 Ventura would deliver $200,000 to the Trustee to hold on deposit (the "Lis
20 | Pendens Deposit") as a condition of granting 18607 Ventura's Motion to Expunge Lis
21 | Pendens. The Lis Pendens Order is attached as **Exhibit 5**. The Lis Pendens Stipulation is
22 | attached as **Exhibit 6**.

23 |      **f.**     On or about October 3, 2007, the Defendant Parties filed a motion for
24 | summary judgment against the Trustee ("Defendants' SJ Motion"). A hearing was conducted
25 | on the Defendants' SJ Motion on November 7, 2007 and was continued to November 14,
26 | 2007 and subsequently continued again until January 30, 2008 to allow the parties to complete
27 | settlement discussions. **Exhibit 8** is a copy of the Court's tentative ruling on the Defendants'
28 | SJ Motion.

exhibits) is attached as **Exhibit 4**. In November 2004, the Defendant Parties filed a motion to dismiss the Complaint. By order entered April 13, 2005, the Court denied that motion.

  **d.**  On June 16, 2006, in the Bankruptcy Case, the Bankruptcy Court entered an order approving a settlement (the "Attia-Schnapp Settlement") between the Trustee and the following persons and entities: (1) Yossi Attia, (2) Moshe Schnapp, (3) Adagio Trading, Ltd., (4) AS Holdings, LLC, (5) Aerial Development, Inc., (6) American Realty Group, Inc., (7) Moshe Har Adir, (8) Bonanza Realty Inc., (9) Bonanza Realty LLC, (10) Elite Seafood and Provisions, LLC, (11) Glendon Advisors, Inc., (12) Q Boy, Ltd. (Foreign), (13) Q Boy Ltd. (Nevada) (14) SC SC, LLC, (15) SSWP, LLC, (16) Van Nuys Plaza, LLC, (17) Amotz "Bobby" Frenkel, (18) Nili Frenkel, (19) Westlock Holdings, Ltd., (20) Ilan Kenig, and (21) A.O. Holdings, LLC (collectively, the "Attia-Schnapp Parties"). The Defendant Parties were not parties to the Attia-Schnapp Settlement and did not consent to it. On July 6, 2006, in the Bankruptcy Case, based on objections filed by the Defendant Parties to a motion by the Attia-Schnapp Parties for a determination that the Attia-Schnapp Settlement was in good faith under Cal. Code Civ.Proc. § 877.6, the Bankruptcy Court filed a ruling (the "§ 877.6 Ruling") that the Attia-Schnapp Parties did not settle in good faith within the meaning of § 877.6.

  **e.**  On August 4, 2006 the Court entered "Lis Pendens Order" requiring the Trustee and 18607 Ventura to enter into a stipulation (the "Lis Pendens Stipulation") by which 18607 Ventura would deliver $200,000 to the Trustee to hold on deposit (the "Lis Pendens Deposit") as a condition of granting 18607 Ventura's Motion to Expunge Lis Pendens. The Lis Pendens Order is attached as **Exhibit 5**. The Lis Pendens Stipulation is attached as **Exhibit 6**.

  **f.**  On or about October 3, 2007, the Defendant Parties filed a motion for summary judgment against the Trustee ("Defendants' SJ Motion"). Prior to the hearing, the Trustee filed an opposition to the Defendants' SJ Motion. The Trustee's opposition included a request to take judicial notice and declarations by Grant Newton and Michael Cardenas and excerpts from various depositions conducted by me. **Exhibit 8** is a copy of the Court's tentative ruling on the Defendants' SJ Motion. A hearing was conducted on the Defendants'

1 | SJ Motion on November 7, 2007 and the hearing on that motion was continued to November
2 | 14, 2007 and subsequently continued again until January 30, 2008.
3 |     **4.**    On December 17, 2007, I caused my office to serve a copy of the Notice of
4 | Hearing in the form of **Exhibit 7** on (a) Kubrak's counsel, (b) Michaely's counsel, (c) counsel
5 | for 18607 Ventura, (d) the Debtors, (e) the Office of the United States Trustee, and (f) all
6 | persons and entities entitled to notice under the Court's April 8, 2005 order limiting notice.
7 |     **5.**    The settlement agreement attached as **Exhibit 1** to this motion constitutes the
8 | entire agreement between the Trustee and the Defendant parties for the settlement of their
9 | disputes. The settlement agreement was negotiated at arm's length. During the settlement
10 | negotiations, I represented the Trustee, Andrew Goodman, Esq. represented 18607 Ventura
11 | and Kubrak and Timothy Hanigan, Esq. represented Michaely.
12 |     **6.**    If the settlement is not approved, the Estate will have to incur substantial time
13 | and expense litigating and collecting this matter. The Trustee's opposition to Defendants' SJ
14 | Motion, which reflects the litigation history of Michaely, which involves years of litigation
15 | with his ex-spouse, a prior bankruptcy by Michaely, and a $20 million judgment against him.
16 | The litigation with the Defendant Parties has been hotly contested throughout the pendency of
17 | this Adversary Proceeding and the entry of any judgment against the Defendant Parties will be
18 | the mid-point, not the end, of litigation against the Defendant Parties. This Agreement
19 | requires the Defendant Parties to pay $250,000 to the Estate and release their rights in the Lis
20 | Pendens Deposit (another approximately $200,000); the proposed settlement also requires the
21 | Defendant Parties to withdraw all proofs of claim, including the $2.2 million claim by
22 | Kubrak. If the Defendant Parties do not pay the full $250,000 (plus releasing their claims to
23 | the Lis Pendens Deposit), then the Defendant Parties will be liable for $2 million.
24 |     I declare under penalty of perjury that the foregoing is true and correct and that this
25 | declaration was executed this 17th day of December 2007 at Los Angeles, California.
26 |
27 |                                       _/s/ Leonard L. Gumport_
                                      **LEONARD L. GUMPORT**
28 |